# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

GEORGIA MOBILE DENTAL, LLC,
J. CODY COWEN, and MICHAEL
JUBAN

CIVIL ACTION

VERSUS

18-269-SDD-EWD

MARK NAPPER, CARE SERVICES
MANAGEMENT, LLC, and MARQUIS
HEALTH SYSTEMS, LLC

## RULING

This matter is before the Court on the *Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Venue to the Middle District of Tennessee*[1] filed by Defendants, Care Services Management, LLC ("CSM"), Marquis Health Systems, LLC ("MHS"), and Mark Napper ("Napper") (collectively, "Defendants"). Plaintiffs, Georgia Mobile Dental, LLC, J. Cody Cowen ("Cowen"), and Michael Juban ("Juban") ( collectively, "Plaintiffs") have filed an *Opposition*[2] to this motion, to which Defendants filed a *Reply*.[3] For the reasons which follow, the Court finds that both venue and the exercise of personal jurisdiction over the Defendants is proper, and

---

[1] Rec. Doc. No. 5.
[2] Rec. Doc. No. 6.
[3] Rec. Doc. No. 12.

Document Number: 48377

the motion shall be denied.

## I. FACTUAL BACKGROUND

This suit arises from a dispute involving a contractual business relationship between Plaintiffs and Defendants.[4] Plaintiffs assert that Napper, a domiciliary of Tennessee, on behalf of CSM and MHS,[5] contacted Plaintiffs to solicit a business opportunity to enter the mobile dentistry industry to the mutual benefit of all parties.[6] Following communications between the parties, Napper traveled to Baton Rouge, Louisiana, on May 14, 2016 to meet with Juban and others[7] at Sushi Yama, a restaurant in Baton Rouge, so that Napper could present a business opportunity to Juban and Cowen (the "Sushi Yama meeting").[8] Although Cowen did not attend the Sushi Yama meeting, he was informed by Juban of the meeting's substance.[9] Plaintiffs allege that "[e]verything started" at the Sushi Yama meeting.[10] Based on a series of alleged misrepresentations by Napper at the Sushi Yama meeting, Juban and Cowen, both domiciled in Louisiana, formed Georgia Mobile Dental, LLC[11] to operate their mobile dentistry business in Georgia and "invested substantially in the business."[12] Despite

---

[4] Rec. Doc. 1-2.
[5] Napper signed all contracts in his capacity as CEO of CSM and MHS. Rec. Doc 1-2, p. 14.
[6] Rec. Doc. 6.
[7] Other participants included Sally Daly, DDS, Louis Lefebvre, DDS, and Dave Grand. Rec. Doc. 1-2.
[8] Rec. Doc. 6, p. 3.
[9] Rec. Doc. 1-2. p. 12.
[10] Rec. Doc. 6, p. 2.
[11] A Louisiana limited liability company.
[12] *Id.* at 3-4.

representations by Napper that "he and his companies were experts in all aspects of the mobile dentistry niche,"[13] Georgia Mobile Dental, LLC was ultimately a failure, and Plaintiffs suffered hundreds of thousands of dollars in losses.[14]

According to Plaintiffs, the Sushi Yama meeting lasted two hours,[15] and was "set up by Napper so that he could sell a business opportunity to Plaintiffs Juban and Cowen."[16] Plaintiffs list a series of alleged misrepresentations by Defendants allegedly made "with the intent to gain an unjust financial advantage over Plaintiffs" to induce Plaintiffs to enter in to contracts and purchase a mobile dental unit for $400,000."[17] The misrepresentations alleged include, *inter alia*: (1) that Defendants were familiar with the dental reimbursement laws of Georgia; (2) that Defendants had expertise and know-how to obtain payment for services rendered by Georgia Mobile Dental, LLC; and (3) that Defendants "were willing to buy-back the mobile dental unit if Defendants did not fulfill contractual duties.[18] Plaintiffs allege that "[a]ll of these misrepresentations occurred in Baton Rouge and/or stemmed from the Sushi Yama meeting."[19]

Plaintiffs further allege contacts with Louisiana through communications concerning business sent from Napper to Plaintiffs before and after Plaintiffs were

---

[13] Rec. Doc. 1-2, p. 12.
[14] *Id.* at 20
[15] Rec. Doc. 6-1, p. 2.
[16] Rec. Doc. 6, p.3.
[17] *Id.*
[18] *Id.*
[19] *Id.* at 4

Document Number: 48377

operating Georgia Mobile Dental, LLC, while Plaintiffs were in Baton Rouge, Louisiana.[20] Napper traveled to Baton Rouge, Louisiana, to meet Cowen at Juban's office "to conduct business related to the mobile dentistry contracts" in January 2017.[21]

Defendants assert the Sushi Yama meeting lasted 45 minutes, and they describe the meeting as a discussion of "a potential business arrangement."[22] Defendants concede that Napper traveled to Louisiana twice to discuss the "potential business arrangements."[23] However, Defendants argue that the substantial acts giving rise to the claim occurred in Tennessee.[24] Defendants now move for the Court to dismiss Plaintiffs' claims for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer this case to the Middle District of Tennessee.[25]

## II.  LAW & ANALYSIS

### A.  General Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident.[26]  When a district court rules on a motion to dismiss without an evidentiary

---

[20] Rec. Doc. No. 6-2. p. 3.
[21] *Id.*
[22] Rec. Doc. No. 5-1, p. 2.
[23] *Id.*
[24] *Id.* at 17.
[25] Rec. Doc. No. 5.
[26] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir.1982), *cert. den.*, 450 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983).

Document Number: 48377

hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[27]  At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[28]

To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery ... But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[29]  "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."[30]

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located."[31]  Thus, personal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  In

---

[27] *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230–31 (5th Cir.1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 [1985], and *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir.1986), *cert. den.*, 481 U.S. 1015 (1987).

[28] *D.J. Inv., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir.1985).

[29] *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (holding that a district court erred in requiring a plaintiff to establish more than a prima facie case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).

[30] *Id.* at 245 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).

[31] *Walk Haydel*, 517 F.3d at 242.

Document Number: 48377

this case, these two queries merge into one because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause of the U.S. Constitution.[32]

Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general jurisdiction" over any action brought against the defendant.[33] Where contacts are less pervasive, a court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[34]

Plaintiffs do not appear to argue for the Court's exercise of general jurisdiction; rather they assert the Court's exercise of specific jurisdiction. Because Plaintiffs have not advanced an argument for the exercise of general jurisdiction, the Court's inquiry will only address specific jurisdiction.

### B. Specific Jurisdiction

The constitutional requirements for specific jurisdiction may be satisfied by showing that the defendant has sufficient "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice."[35] The Fifth Circuit follows a three-step analysis for this determination. First, a

---

[32] *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *St. Martin & Mahoney v. Patton*, 863 F.Supp. 311, 313–14 (E.D.La.1994).
[33] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).
[34] *Id.* at 414; *Luv N' care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[35] *Luv N' care*, 438 F.3d at 469 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

Document Number: 48377

court must determine "whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[36]

This "minimum contacts" or "purposeful availment" inquiry is fact intensive. No one element is decisive, and the number of contacts with the forum state is not, by itself, determinative.[37] A single, substantial act directed toward the forum can support specific jurisdiction,[38] but even multiple contacts, if "[r]andom, fortuitous, or attenuated ... are not sufficient to establish jurisdiction."[39] What is significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the privileges or benefits of the laws of the forum state.[40]

Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[41] At this step, the proper focus in the analysis is on the "relationship among the defendant, the forum, and the litigation."[42] This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum

---

[36] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958).

[37] *Luv N' care*, 438 F.3d at 470.

[38] *See ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir.1990).

[39] *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King*, 471 U.S. at 479 (1985)).

[40] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citing *Hanson* 357 U.S. at 251, 254); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983), *cert. den.*, 466 U.S. 962 (1984).

[41] *Nuovo Pignone*, 310 F.3d at 378.

[42] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

Document Number: 48377

contacts."[43]

Finally, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable."[44]  In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[45]  "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[46]

### C. Minimum Contacts

Personal jurisdiction may not be avoided merely because a defendant did not physically enter the forum state.  Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a state in which business is conducted. As long as a commercial actor's efforts are "purposefully directed" toward residents of the

---

[43] *Conwill v. Greenberg Traurig, L.L.P., et al.*, No. 09-4365, 2009 WL 5178310 at *3 (E.D.La. Dec. 22, 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006)).
[44] *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382).
[45] *Luv N' care*, 438 F.3d at 473; *see also, Burger King Corp.*, 471 U.S. at 476–77 (listing 7 factors).
[46] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008)(citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).

Document Number: 48377

state in question, courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.[47]

Nonetheless, "merely contracting with a resident of the forum state does not establish minimum contacts."[48]  "A contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."[49]

Although a single act, such as a telephone call or mailing a letter, can be sufficient to establish minimum contacts, precedent is clear that communications alone are insufficient when "the communications with the forum did not actually give rise to [the] cause of action."[50]  Rather, when communications relating to conducting business are the only contacts, courts generally require some type of "continuing obligations" between the defendant and residents of the forum, such as is found in an ongoing business relationship, to find that the defendant availed himself of the privilege of conducting business in the forum. Only then, "because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to

---

[47] *Burger King*, 471 U.S. at 476–77.
[48] *Moncrief Oil*, 481 F.3d at 311.
[49] *Burger King*, 471 U.S. at 479 (internal citations omitted).
[50] *Wein Air*, 195 F.3d at 213; *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir.1992).

Document Number: 48377

submit to the burdens of litigation in that forum as well."[51]

On the other hand, for claims of intentional tort, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[52] "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[53]

Plaintiffs heavily rely on this Court's decision in *J.A.H. Enterprises, Inc. v. BLH Equipment, LLC*[54] to support their claim of sufficient minimum contacts to allow the exercise of specific jurisdiction. In *J.A.H.,* the dispute arose out of a transaction involving a casino vessel. The Court found that J.A.H. had established a *prima facie* case of minimum contacts by the defendant to support a finding of specific personal jurisdiction based on allegations that the defendant "negotiated and was otherwise involved in the purchase of the casino vessel in Louisiana or otherwise traveled to Louisiana to engage in other business transaction with Henderson Auctions." Similarly, in the present case, Napper flew to Baton Rouge, Louisiana, to "solicit or market [to Plaintiff] a business opportunity . . . ."[55] And, according to Juban's affidavit, Juban and Cowen, on behalf of

---

[51] *Burger King*, 471 U.S. at 476.
[52] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (citing *Brown v. Flowers Indus.*, 688 F.2d 328, 332–33 (5th Cir.1984)(holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts)).
[53] *Wein Air*, 195 F.3d at 213 (5th Cir.1999); *see also, Ross*, 246 Fed.Appx. 856, 859–60 (5th Cir. 2007)(deeming allegations that out of state counsel communicated false information to client in Texas alone sufficient to make prima facie case of specific personal jurisdiction).
[54] 2016 WL 9402565 (M.D. La., 2016).
[55] Rec. Doc. No. 6-1.

Document Number: 48377

their company Georgia Mobile Dental, LLC,[56] entered into two contracts with Defendants, and "all of these contracts were executed in Baton Rouge, Louisiana."[57]

The Court in *J.A.H.* further noted that the defendant "travelled to Louisiana on 10-15 occasions to discuss business with Henderson Auctions and that he accompanied Blake Everett to meet Mr. Rhodes in Louisiana in 2013 regarding the sale of the casino vessel."[58] The current Defendants point out in their *Reply*[59] that the two visits by Napper to Louisiana are "far less than ten to fifteen."[60] However, the Court in *J.A.H.* is referring to occasions where the defendant "traveled to Louisiana to engage in other business transactions with Henderson Auctions."[61] In any event, it is clear that Napper visited Louisiana twice concerning the business, and it was during these visits that Plaintiffs allege Defendants committed torts of fraud in the inducement, unjust enrichment, and negligent misrepresentation.[62]

Defendants rely on *DNH, LLC v. In-N-out Burgers*[63] to support their argument that Defendants lack minimum contacts with the forum to support specific personal jurisdiction for this suit. In that case, DNH sued In-N-Out and sought a declaratory judgment that DNH's use of a similar trademark did not infringe on In-N-Out's registered trademarks.

---

[56] Also Plaintiff in this case.
[57] Rec. Doc. No. 6-1, p. 3.
[58] *Id.* at *5.
[59] Rec. Doc. No. 12.
[60] *Id.* at 3.
[61] 2016 WL 9402565 at 5 (M.D. La., 2016).
[62] Rec. Doc. No. 6, p. 2.
[63] 381 F. Supp. 2d 559 (E.D. La. 2005).

Document Number: 48377

DNH sued in the Eastern District of Louisiana arguing the Court had personal jurisdiction over In-N-Out, a California company, based on In-N-Out's prior threats to DNH "in three letters and various phone calls" and because In-N-Out "also negotiated the settlement agreement with them."[64] The court found those contacts with Louisiana insufficient for the exercise of specific personal jurisdiction because "there is nothing to indicate that the defendants purposefully directed its activities at the state or purposefully availed itself of the benefits and protections of that state."[65] Moreover, the court stated that "[p]rinciples of fair play and substantial justice afford [a party] sufficient latitude to inform others of its ... rights without subjecting itself to jurisdiction in a foreign forum."[66]

The Court finds Defendants' reliance on *DNH* misplaced. In *DNH*, all contacts alleged by the plaintiff were a result of the dispute in which they were currently engaged. In the present case, all alleged contacts with Louisiana precipitated the dispute, rather than resulted from the dispute. Defendants contacted and traveled to Louisiana to solicit business from Plaintiffs, and according to Plaintiffs, made the misrepresentations that induced Plaintiffs into commencing a Louisiana business. Under the facts as alleged, the Defendants contacts in Louisiana were purposefully directed. In *DNH*, the dispute gave rise to the contacts with the forum, while in the present case the contacts with the forum

---

[64] DNH, L.L.C. v. In-N-Out Burgers, 381 F. Supp. 2d 559, 563 (E.D. La. 2005).
[65] *Id.* at 564.
[66] *Id.* (quoting *Compana, LLC v. Emke*, No. 3–03–CV–2372–M, 2004 WL 2058782, at *4 (N.D.Tex. Sept.15, 2004) (citing *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed.Cir.1998)); see *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed.Cir.2003).

Document Number: 48377

gave rise to the dispute.

The decision in *DNH* is also unavailing to the Defendants herein because the *DNH* Court cited *Calder v. Jones,*[67] which states, "[u]nder the 'effects' test, minimum contacts may exist when a nonresident defendant expressly aims intentionally tortious activity at the forum state and knows that the brunt of the injury will be felt by a forum resident."[68] As Plaintiffs herein essentially make this same argument, *DNH* offers little support for Defendants' position.

Defendants also argue that the "only alleged fact that supports personal jurisdiction in Louisiana is that Plaintiffs, despite never doing business in Louisiana, is a Louisiana company."[69] Yet, Defendants ignore Napper's two trips to Louisiana for soliciting the Plaintiffs' investment in the business at issue in this case. Defendants also assert that the "[t]wo visits to Louisiana for less than an hour each does not establish that the CSM purposely availed itself to the benefits and protections of the state of Louisiana. Napper, personally, and MHS do not even have these contacts."[70] This argument is meritless considering Defendants admit that Napper personally visited Plaintiffs in Louisiana on two occasions to discuss the business at issue in this case.[71]

The facts alleged by Plaintiff, which must be accepted by the Court as true for

---

[67] 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984),
[68] *DNH, L.L.C. v. In-N-Out Burgers*, 381 F. Supp. 2d 559, 564 (E.D. La. 2005).
[69] Rec. Doc. No. 5-1, p. 9.
[70] *Id.*
[71] "Napper, himself, visited Louisiana twice each time having a 45 minute dinner with the individual Plaintiffs." Rec. Doc. No. 5-1, p. 2.

Document Number: 48377

purposes of this motion, support a finding of minimum contacts to exercise specific personal jurisdiction. As discussed above, Napper, on behalf of CSM and MHS,[72] contacted Plaintiffs in Louisiana by emails, telephone calls, and text messages.[73] Napper also traveled to Baton Rouge, Louisiana to meet with Defendants to discuss the business at issue in this case.

Finding sufficient minimum contacts with Louisiana to support the exercise of specific jurisdiction, the Court must now determine "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[74]  The Fifth Circuit holds that specific personal jurisdiction is only appropriate when the nonresident's contacts with Louisiana arise from, or are directly related to, the cause of action asserted by the plaintiff.[75]

In *Blackmon v. Bracken Constr. Co., Inc.*, a recent Middle District of Louisiana case, this Court found specific jurisdiction was proper in a case where a defendant sent letters to a plaintiff in Louisiana, and "the "actual content" of those letters forms the basis of Plaintiffs' fraud claims against [the defendant]."[76] In that case, the defendant made alleged misrepresentations to plaintiff to settle an insurance dispute involving an automobile collision between drivers domiciled in different states. The defendant sent "at

---

[72] As the CEO for both companies, note 5, *supra*.
[73] Rec. Doc. No. 6-1. Rec.
[74] *Nuovo Pignone*, 310 F.3d at 378.
[75] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).
[76] No. CV 18-00142-BAJ-RLB, 2018 WL 4100684, at *3 (M.D. La. 2018).

Document Number: 48377

least three settlement-related letters to Plaintiffs at a Louisiana address, and called Plaintiffs' Louisiana cell-phone number to discuss settlement."[77] Although the defendant in *Blackmon* argued this Court lacked personal jurisdiction because it had never had a physical presence in Louisiana, this Court found that, "[b]ecause the 'actual content' of the three letters [Defendant] sent to [Plaintiffs'] Louisiana address could give rise to the fraud-by-silence claim Plaintiffs have pleaded against [Defendant], [Defendant] has minimum contacts with Louisiana."[78]

Similarly, in the present case, Plaintiffs allege the "actual content" of the Sushi Yama meeting, emails, telephone calls, and text messages from Napper "induced Juban and Cowen to enter into a business deal"[79] that is the subject of this case and "stems from Napper's (and Defendants') contacts with Louisiana and conduct within and toward Louisiana."[80] Defendants' contacts with Louisiana and the Louisiana Plaintiffs give rise to the claims asserted herein.

In *Cooper v. Primary Care Sols., Inc.*, another recent Middle District of Louisiana case, this Court found specific jurisdiction was proper based on allegations "that the Individual Defendants 'came to Baton Rouge Louisiana in March and April 2014 and convinced [the plaintiff] ... through fraudulent misrepresentations ... to sign a sham

---

[77] *Id.*
[78] *Id.*
[79] Rec. Doc. No. 6, p. 7.
[80] *Id.* at 8.

Document Number: 48377

contract...."[81] In *Cooper*, the Court found the contacts were sufficient to find a "prima facie showing of personal jurisdiction."[82]

Additionally, The United States Court of Appeals for the Fifth Circuit has consistently held that a court has specific jurisdiction over a nonresident defendant based on communications with the forum when the "actual content" of that communication gives rise to an intentional tort.[83] Recently, in *Trois v. Apple Tree Auction Ctr., Inc.*, the Fifth Circuit affirmed the exercise of specific personal jurisdiction concerning a fraud claim based on alleged misrepresentations made in a single phone call to the forum.[84] In *Wien Air Alaska v. Brandt*, the Fifth Circuit found personal jurisdiction proper over a foreign attorney because the fraud claims arose from the communications between the foreign attorney and the forum.[85] Likewise, in *Lewis v. Fresne*, the Fifth Circuit similarly found personal jurisdiction proper over a defendant concerning a fraud claim which arose from defendant's phone conference and documents sent to a forum-resident plaintiff.[86]

As set forth in detail above, Plaintiff has presented the Court with allegations, accepted as true, which support a finding of minimum contacts with Louisiana such that the Court's exercise of specific personal jurisdiction over Defendants is proper.

---

[81] *Cooper v. Primary Care Sols.*, Inc., No. CV16259EWDCONSENT, 2017 WL 4544606, at *9 (M.D. La. Oct. 11, 2017).
[82] *Id.* at *10 (citing *Johnston v. Multidata Systems Intern. Corp.,* 523 F.3d 602, 609 (5th Cir. 2008)).
[83] See *Trois v. Apple Tree Auction Ctr., Inc.,* 882 F.3d 485 (5th Cir. 2018); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999); *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001).
[84] *Trois*, 882 F.3d 485 (5th Cir. 2018).
[85] *Wien Air Alaska, Inc.*, 195 F.3d 208.
[86] *Lewis*, 252 F.3d 353.

Document Number: 48377

### D. Fairness

Plaintiffs have established that Defendants have minimum contacts with Louisiana. Thus, "the burden shifts to [Defendants] to defeat jurisdiction by showing that [the Court's] exercise of jurisdiction would be unfair or unreasonable."[87] Defendants fail to argue any reasons that jurisdiction would be unfair or unreasonable. Because Defendants have not carried their burden, the Court need not consider further whether they have made a compelling case against the exercise of personal jurisdiction.

### E. Venue

Defendants also move to dismiss this action based on improper venue pursuant to Federal Rules of Civil Procedure Rule 12(b)(3). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."[88] If the Court finds venue proper, Defendants alternatively request the Court to transfer this action to the Middle District of Tennessee as a matter of convenience.

A district court has the authority to transfer a case in the interest of justice to another district in which the action might have been brought, regardless of whether venue exists in the original forum.[89] If venue is proper in the original forum, the transfer may be made pursuant to Section 1404(a), which provides that, "[f]or the convenience

---

[87] *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382).
[88] *Swoboda v. Manders*, 2014 WL 2515410, at *2 (M.D. La. June 4, 2014) (citing *Braspetro Oil Servs. Co. v. Modec* (USA), Inc., 240 Fed.Appx. 612, 615 (5th Cir.2007)).
[89] *See* 28 U.S.C. §§ 1404(a) and § 1406(a).

Document Number: 48377

of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." If venue is improper in the original forum, the transfer must be made under Section 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." If venue is proper, a Court may still transfer a case to another district where it may have been brought for the convenience of the parties and witnesses.[90] The party moving for transfer must show "good cause" for the transfer by showing that the transferee venue is clearly more convenient that the venue chosen by plaintiff.[91]

Defendants' argument that the Middle District of Louisiana is not a proper venue is not persuasive. According to 28 U.S.C. § 1391(b)(2), proper venue for a civil action is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The allegations by Plaintiffs, which must be accepted as true, demonstrate that a substantial part of the events giving rise to the claims of fraud in the inducement, negligent misrepresentation, and breach of fiduciary duty occurred in the Middle District of Louisiana. Through in-person conversations and communications in

---

[90] 28 U.S.C. Section 1404(a).
[91] *In re Volkswagen of Am., Inc.* 545 F.3d 304, 315 (5th Cir. 2008).

Document Number: 48377

Louisiana, Defendants allegedly misrepresented a business opportunity and fraudulently induced the Plaintiffs into contracts at issue in this case.

Defendants rely on *Miller Masonry, Inc. v. EMB Quality Masonry, LLC*[92] to support their argument that venue is not proper in Louisiana. *Miller* was a breach of contract case arising out of a construction project. The contract was partially negotiated in Louisiana before being performed out of state. The court found the negotiation in Louisiana "insubstantial for venue purposes because they do not relate to the nature of Plaintiff's claim."[93] The plaintiff's claim in *Miller* was only for breach of contract. Although the present case has a contractual claim, the four other claims are grounded in intentional tort relating to alleged misrepresentations made by Defendants. Thus, *Miller* does not support Defendant's venue argument.

In *Southern Filter Media, LLC v. Halter*, this Court found venue proper in a dispute over an out-of-state contract where plaintiffs sustained damages in Louisiana. The Court noted, "[i]n a contractual dispute, it is relevant that the defendant solicited the plaintiff's business."[94] In that case, the defendants contended that the only event that took place in Louisiana was a meeting and negotiation. The Court, finding venue proper, held that the defendants had "reached out into this state to contract with [plaintiff]," and

---

[92] 2014 WL 5340747 (Oct. 20, 2014).
[93] *Id.* at *3.
[94] 2013 WL 3423269 at *6 (citing *Joseph v. Emmons*, 2005 WL 757358 (E.D. La. 2005)).

Document Number: 48377

the "[r]epresentations about [defendants] were made in this district or directed to this district."[95]

In *Ross v. Digioia*, the Eastern District of Louisiana found venue proper where allegedly false statements giving rise to a claim of negligent misrepresentation and detrimental reliance claims occurred in the Eastern District.[96] The court also found that venue was proper over the related contract claim. Although the contract in *Ross* was allegedly breached in Florida, the parties negotiated the specifics of the agreement during the defendant's visit to the Eastern District of Louisiana.[97]

For the reasons set forth above, the *Motion to Dismiss for Improper Venue* is denied.

### F. Transfer of Venue

The Court will now consider whether this action should be transferred to another judicial district under 28 U.S.C. § 1404(a). The underlying premise of Section 1404(a) is that courts should prevent plaintiffs from abusing their privilege under Section 1391 by subjecting defendants to venues that are inconvenient under the terms of Section 1404(a).[98]

The Court turns to a consideration of whether transferring the case to the Middle District of Tennessee serves the convenience of the parties and witnesses and is in the

---

[95] *Id.* (citing *Advocate Financial, LLC v. Parker Interests, LLC*, 2008 WL 2773650 (M.D. La. 2008)).
[96] 2012 WL 72703 (E.D. La. 2012).
[97] *Id.* at 4.
[98] *In re Volkswagen of America, Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

interest of justice.[99]  The Fifth Circuit has held that:  "Section 1404(a) venue transfers may be granted 'upon a lesser showing of inconvenience' than *forum non conveniens* dismissals," and "the burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal."[100]  Additionally, the moving party bears the burden of showing "good cause," which the Fifth Circuit explained is satisfied when "the movant demonstrates that the transferee venue is clearly more convenient."[101]

The Fifth Circuit has adopted the private and public interest factors for the determination of whether a Section 1404(a) venue transfer is for the convenience of the parties and witnesses and is in the interest of justice.[102]  The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[103]  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

---

[99] *Id.*; *Entex Production, Inc. v. Mid Continent Cas. Co.*, No. 07-760-JJB-DLD, 2008 WL 191650 at *2 (M.D. La. Jan. 22, 2008).

[100] *Digital–Vending Services, Intern., L.L.C. v. University of Phoenix, Inc.*, 2009 WL 3161361 (E.D.Tex. 2009), citing *In re Volkswagen*, 545 F.3d at 314 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955)).

[101] *In re Volkswagen*, 545 F.3d at 315.

[102] *Id.*

[103] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[104]

Considering these factors, the Court finds the Defendants have failed to show that the Middle District of Tennessee is a clearly more convenient forum than the Middle District of Louisiana. Addressing factors (1) and (2), although Defendants argue that no alleged witnesses reside in Louisiana,[105] Plaintiffs assert that all witnesses of the Sushi Yama meeting, except for Napper, reside in Louisiana,[106] and Napper can be compelled to appear at trial because he is a party.[107] As set forth above, the Court has subpoena power over the witnesses to the Sushi Yama meeting based on their residences. There will inevitably be witnesses outside of the Court's subpoena power; however, some meeting witnesses may also be outside of the subpoena power of the Middle District of Tennessee. Consequently, the Court finds this factor is neutral.

Consideration must also be given to factor (3), the cost of attendance of willing witnesses. Plaintiffs and at least three alleged witnesses to the Sushi Yama meeting live in the Middle District of Louisiana. To the extent Plaintiffs' contract claim concerns the performance of the parties, Defendants argue that the facts concerning the performance by the Defendants occurred in Tennessee, and all records and documents

---

[104] *Id.*
[105] Rec. Doc. No. 5-1, p. 14.
[106] Rec. Doc. No. 6, p. 10.
[107] *Id.*

Document Number: 48377

relating thereto are in Tennessee. However, Defendants have not demonstrated how requiring witnesses to travel to Tennessee is any more or less convenient than requiring witnesses to travel to Louisiana. Plaintiffs have identified non-party witnesses to the Sushi Yama meeting who will be outside of the subpoena power of the Middle District of Tennessee. Further, neither party has argued for or against private interest factor (4) - all other practical problems that make trial of a case easy – thus, this factor remains neutral, and the private interest factors, in general, do not weigh for or against either venue.

Concerning the public interest factors, Defendants correctly point out that the contract at issue is governed by Tennessee law; however, there is no suggestion that this Court cannot apply the law of Tennessee to this case. The remaining claims asserted by Plaintiffs, including fraud in the inducement, unjust enrichment, negligent misrepresentation, and breach of fiduciary duty, stem from the alleged misrepresentations allegedly intentionally made by Napper to Plaintiffs when Plaintiffs resided in Louisiana, and Louisiana law governs these tort claims. Plaintiffs also point out that numerous Louisiana residents have purchased mobile dental units from Napper.[108] As such, the Court finds that Louisiana has a strong interest in having these claims litigated in this forum.

---

[108] Plaintiffs' affidavit lists at least 7 Louisiana residents who entered in to business with Napper. Rec. Doc. No. 6-1, p. 3.

Document Number: 48377

Accordingly, the Court finds that the private and public interest factors do not weigh in favor of transfer, and Defendants have failed to demonstrate that the transferee forum is clearly more convenient. "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[109] Accordingly, the *Alternative Motion to Transfer Venue* shall be denied.

## III.    CONCLUSION

For the reasons set forth above, the *Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer Venue to the Middle District of Tennessee*[110] is DENIED.

**IT IS ORDERED.**

Baton Rouge, Louisiana, this 16th day of November, 2018.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[109] *In re Volkswagen*, 545 F.3d at 315.
[110] Rec. Doc. No. 5.

Document Number: 48377